# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-154V

| | |
|---|---|
| ERIK AND LISA LINDHOLM, *on behalf of* K.E.L., | **TO BE PUBLISHED** |
| Petitioners, | Special Master Katherine E. Oler |
| v. | Filed: February 3, 2020 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Interim Attorneys' Fees and Costs |
| Respondent. | |

*Robert D. Trzynka*, Hovland, Rasmus, Brendtro & Trzynka, Prof. LLC, Sioux Falls, SD, for Petitioners.

*Mollie D. Gorney*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On February 1, 2017, Erik and Lisa Lindholm ("Petitioners") filed a petition for compensation under the National Vaccine Injury Program[2] on behalf of their child, K.E.L., alleging that he suffered from injuries, including epileptic spasms, global developmental delay,

---

[1] This Decision will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)).  **This means the ruling will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 24 (2012) ("Vaccine Act" or "the Act"). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

and acquired microcephaly, as a result of the DTaP vaccination he received on February 26, 2014. Pet. at 1, ECF No. 1.

On December 4, 2018, Petitioners filed their motion for interim attorneys' fees and costs requesting a total of $63,674.08[3]. *See* Fees App., ECF No. 36. Respondent filed a response to Petitioners' application on December 7, 2018. Fees Resp., ECF No. 37. Respondent states that "[n]either the Vaccine Act nor Vaccine Rule 13 requires [R]espondent to file a response to a request by a petitioner for an award of attorneys' fees and costs." *Id.* at 1. Respondent adds that that he "defers to [me] to determine whether or not [P]etitioner has met the legal standard for an award of interim fees and costs" and whether "the statutory requirements for an award of attorney[s'] fees and costs" are met in this case. *Id.* at 2. Respondent did not raise any specific issue with respect to reasonable basis or good faith. *See generally* Fees Resp.

On June 24, 2019, I ordered Petitioners to file all invoices, receipts, or other supporting documentation for the requested interim attorneys' fees and costs. *See* Scheduling Order, ECF No. 40. I also directed Petitioners to file a status report "addressing any additional points of clarification regarding the division of fees and costs." *Id.* On July 15, 2019, Petitioners' counsel filed an affidavit, invoices, and a status update regarding costs expended in this case, as well as a General Order No. 9 Statement. *See* ECF Nos. 41, 42, 43, 43-1, 43-2, 43-3.

For the reasons discussed below, I hereby **GRANT IN PART** Petitioners' application and award a total of **$52,978.60** in interim attorneys' fees and costs.

## I. Legal Standard

### A. Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Human Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of

---

[3] Petitioners' motion for interim attorneys' fees and costs failed to include a total of the fees and costs requested. Petitioners' motion incorrectly calculated their expenses as $27,243.09. *See* Fees App. at 3, ECF No. 36. Petitioners' expenses included Dr. Wilkerson's expert report, medical record invoices, and postage. Petitioners' General Order No. 9 Statement correctly totals all medical records and postage costs to $827.60. Petitioners' actual expenses totaled $27,340.10. All invoices and documentation were provided as a part of Mr. Trzynka's Affidavit on July 15, 2019. *See* ECF No. 43. Under normal circumstances, I would only grant the amount requested by a petitioner, however, Petitioners paid nearly all expenses themselves, including $17,500.00 to their expert, Dr. Wilkerson. Thus, Petitioners shall be reimbursed for the entirety of their expenses.

litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Human Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Human Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Human Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Human Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Human Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id.*

### B. Good Faith and Reasonable Basis

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as a petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

It is incumbent upon petitioners to "affirmatively demonstrate a reasonable basis," which is an objective inquiry. *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011); *Di Roma*, 1993 WL 496981, at *1. When determining if a reasonable basis exists, many special masters and judges employ a totality of the circumstances test. The factors to be considered under this test may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). This "totality of the circumstances" approach allows the special master to look at each application for attorneys' fees and costs on a

case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

A petitioner's counsel is expected to make a pre-filing inquiry into a claim to ensure that it has a reasonable basis. *See Turner*, 2007 WL 4410030, at *6-7. Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Id*. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015). The evidence presented must be "sufficient to give the petitioner a reasonable expectation of establishing causation." *Bekiaris v. Sec'y of Health & Human Servs.*, No. 14-750V, 2018 WL 4908000, at *6 (Fed. Cl. Spec. Mstr. Sep. 25, 2018). Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Id*.

The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis because the petitioner could not meet the burden of proof needed to establish reasonable basis." *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014). In rationalizing its decision, the *Chuisano* court highlighted the ruling in *Austin* as an example of a petition that minimally crossed the required evidentiary threshold. *Id*. at 292, citing *Austin v. Sec'y of Health and Human Servs.,* No. 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013). In that case, the special master found reasonable basis where only a single notation by a medical provider linked the alleged injury to the vaccination. *Austin*, 2013 WL 659574, at *8. Still, the Court in *Chuisano* emphasized the totality-of-the-circumstances test, and stated that "[a]n evidentiary standard may serve as an excellent guidepost in fee decisions, but it cannot serve as the bright-line threshold. Such a rigid position is at variance with the flexible structure of the [V]accine [P]rogram." *Chuisano,* 116 Fed. Cl. at 287. While the statute does not define the standard for reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Id*.

**II.    Discussion**

**A.  Undue Financial Hardship**

The parties are currently acquiring additional medical opinions as they await dates for an entitlement hearing to become available. Petitioners and their counsel have been litigating this claim for more than two years and Petitioners have spent thousands of dollars of their own money to do so. Thus, I find it reasonable to award interim costs at this juncture to avoid any undue financial hardship.

**B.  Good Faith and Reasonable Basis**

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is a much lower standard than the burden to prove entitlement to compensation by preponderant evidence.  In making a reasonable basis determination, I must look at a totality of the circumstances, taking into account the factual basis for the claim and the medical and scientific support offered.  Petitioners have filed extensive medical records in this case.  Petitioners have also submitted an expert report in which Dr. L. Douglas Wilkerson ("Dr. Wilkerson"), M.D., an adolescent and pediatric neurologist, offers a possible theory of causation.  *See* Pet'rs' Expert Rep., ECF No. 32.  I find that Petitioners had a reasonable basis to file their claim.

As there is no other reason to deny the award of interim attorneys' fees and costs, I will award Petitioners' reasonable fees and costs in this instance.

**C. Attorneys' Fees**

Petitioners request a total of $36,430.99 in attorneys' fees.  *See* Fees App. at 3.

*i. Reasonable Hourly Rate*

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11).  In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience.  *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Petitioners' original counsel, Ms. Sharla Svennes, requests that she be compensated at a rate of $225.00 per hour for work performed from 2015 to 2018.  Fees App. at 2.  Ms. Svennes is a licensed and practicing attorney since 2012, located in Sioux Falls, South Dakota.  *See* Svennes Aff., ECF No. 36-1.

---

[4] The 2015–2016 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.
The 2017 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.

In reviewing the billing entries, I find that Ms. Svennes demonstrated some inexperience in her handling of this case.  For example, she billed time to familiarize herself with the standards of the Program; she billed for two phone calls to Mr. Edward M. Kraus, an experienced attorney in the Program, to discuss the merits of this case and revisions to the petition; and she improperly filed exhibits which necessitated the filing of two amended exhibit lists.[5]  *See generally* Ex. 1 of Pet'rs' Mot. for Interim Attorney's Fees and Costs, ECF No. 36-2.

Further, Ms. Svennes required her clients to pay more than $18,000 out-of-pocket to retain an expert in their case, and to pay additional ancillary costs, to include retrieval of medical records, and postage costs.

The Vaccine Act provides: "No attorney may charge any fee for services in connection with a petition filed under Section 300aa-11 of this title which is in addition to any amount awarded as compensation by the special master or court under paragraph (1)." 42 U.S.C. §§ 300aa-15(e)(3).

Petitioners' General Order No. 9 Statement indicates that Petitioners, while represented by Ms. Svennes, paid $17,500.00 out-of-pocket to Dr. Wilkerson for his expert report and a total of $827.60 for "invoices for medical records" and "invoices for postage costs."  *See* Gen. Order No. 9 Statement, ECF No. 42; *see also* Ex. A-C of Trzynka Aff., ECF No. 43.  Petitioners' out-of-pocket payment for Dr. Wilkerson's expert report and other costs is inconsistent with the statutory language of the Vaccine Program.  Special Master Moran addressed a similar issue in *K.O. v. Sec'y of Health & Human Servs.*, No. 13-472, 2017 WL 4385751 (Fed. Cl. Spec. Mstr. Aug. 22, 2017).  In that case, Petitioner paid a second attorney in advance of the special master's fees decision, an amount that was in excess of the final amount awarded.  In determining that Petitioner was owed a refund, the special master wrote, "[i]t cannot be true that an attorney can avoid the congressionally-imposed restriction in section 15(e)(3) simply by collecting money before submitting the fee application."  *K.O.*, 2017 WL 4385751, at *5.

As a result of these matters discussed above, I am reducing Ms. Svennes' hourly rate to $200.00 per hour.[6]

Mr. Robert Trzynka became co-counsel in October 2018 and the sole counsel of record on May 23, 2019.  *See* Mot. to Substitute, ECF No. 39.  He requested to be compensated at a rate of $250.00 per hour for his work done in 2018.  Fees App. at 3.  Mr. Trzynka has been a licensed attorney since 2012.  Ex. B. of Fees App., ECF No. 36.  Mr. Tryzynka has been awarded this rate

---

[5] It should be noted that the exhibits for Petitioners' Motion for Interim Attorney's Fees and Costs were also incorrectly labeled and filed.

[6] There has not been a determination on whether Sioux Falls, South Dakota is entitled to the D.C. forum rates set in the OSM Attorneys' Fee Schedule.  My decision to reduce Ms. Svennes' hourly rate is based purely on her level of experience, and as a result, some of the errors made in this case.  I am not making a determination of whether Sioux Falls, South Dakota is entitled to the rates established by the OSM Attorneys' Fee Schedule.

Additionally, the 2015-2016 OSM Attorneys' Fee Schedule establishes the range for attorneys with fewer than four years of experience as between $150 and $225 per hour.

in the Program before. *See Carda v. Sec'y of Health & Human Servs.*, No. 14-191, 2017 WL 7510716 (Fed. Cl. Spec. Mstr. Dec. 19, 2017) (awarding Mr. Trzynka a rate of $250.00 per hour, an increase of $50 per hour from the $200 hourly rate he requested in a Motion for Interim Attorneys' Fees and Cost from 2016 in the same case). Accordingly, I find Mr. Trzynka's requested rates to be reasonable and that no adjustment is warranted.

### ii. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Petitioners' counsel have provided a breakdown of hours billed and costs incurred. Exs. 1-3, Fees App. I find Mr. Trzynka's hours to be reasonable and thus no reduction is necessary for Mr. Trzynka's requested fees. I grant **$8,946.00** for Mr. Trzynka's work.

As noted above, because Ms. Svennes made errors as a relatively new attorney in the Vaccine Program, some reduction is warranted. Ms. Svennes billed 0.7 hours for "research re[garding] level of specific re[garding] causation required for Petition," and approximately one hour to "review and analyze vaccine injury table." *See* Ex. 1 at 2, 3 of Fees App. General research of the Program cannot be billed to the client. Accordingly, I will reduce the fees billed by Ms. Svennes for research by 1.7 hours at $200/hour, or **$340.00**.

Ms. Svennes billed for communication to Petitioners for payment for Dr. Wilkerson's expert report. Because Petitioners should not be charged for any fees associated with their petition, as discussed above, Ms. Svennes should not receive payment for time taken to organize payment for the expert report. *See, e.g.,* Ex. 1 at 7-10 (entries totaling 1.9 hours on 11/22/17, 11/29/17, 12/1/17, 14/4/17, 12/6/17 (two entries), 12/7/17, 3/15/18 (two entries), 6/16/18), Fees App. Accordingly, I will reduce the fees by 1.9 hours at $200/hour, or **$380.00**.

Ms. Svennes billed an excessive number of hours for the preparation and filing of the petition. *See, e.g.,* Ex. 1 at 2-4 (entries totaling 18.7 hours on 9/13/16, 9/14/16, 9/15/16, 9/16/16, 9/19/16, 9/20/16, 10/20/16, 11/6/16, 1/7/17, 1/18/17, 1/25/17), Fees App. I will reduce the total number of hours for work on the Petition to a more reasonable amount of time, 10 hours. Accordingly, I will reduce the fees by 8.7 hours at $200/hour, or **$1,740.00**.

7

As such, Ms. Svennes' hours are reduced from 114.7 hours to 102.4 hours. Since Ms. Svennes' hourly rates was reduced to $200/hour, Ms. Svennes will be awarded **$20,480.00**.

Total attorneys' fees to be awarded: **$29,426.00**

### D. Reasonable Costs

Petitioners request a total of $27,243.09[7] in costs, which includes obtaining medical records, postage costs, the Court's filing fee, and expert witness fees. Fees App. at 3.

*i. Petitioners' expert costs*

Petitioners request costs for the work performed by Dr. Wilkerson. Dr. Wilkerson billed for 50.5 hours at a rate of $525.00 per hour, for a total of $26,512.50. Fees App., Ex. 2. Dr. Wilkerson is a new expert in the Program and has not been awarded expert fees. His CV establishes that he taught at the University of Pennsylvania School of Medicine in both the Department of Neurology and the Department of Pediatrics for 15 years. *Id.* at 2. Additionally, Dr. Wilkerson has been a pediatric neurologist at Bryn Mawr Hospital for nearly 40 years and has served as the Director of the Department of Pediatrics at the hospital from 1992-1998. *Id.* Dr. Wilkerson is board certified in both pediatrics and neurology. *Id*. at 1. Dr. Wilkerson is also a member of numerous medical societies and has published scientific papers. *Id.* at 3.

Dr. Wilkerson billed 50.5 hours for the work he performed in this case. Dr. Wilkerson billed 24.75 hours for reviewing K.E.L.'s medical records, which total approximately 1100 pages. Dr. Wilkerson spent another 24.75 hours on his nine-page expert report. In this report, he does not cite with specificity to any of K.E.L.'s medical records or to any medical literature. In fact, Dr. Wilkerson's invoice is silent on whether he reviewed any medical literature before preparing his report. ECF No. 36-3. Dr. Wilkerson's expert report does not communicate a scientific theory by which K.E.L. allegedly suffered injuries from the DTaP vaccination, stating "an unspecified immune mechanism is most likely involved." ECF No. 32 at 3. Dr. Wilkerson also uses several general statements such as, "it is well described in medical literature," "generally acknowledged among specialists," "it is the common experience of child neurologists," and "is understood by medical specialists" but cites to no studies or medical literature to support his statements. *See id.* at 6, 7, 8.

Generally, when an expert is new to the Program, special masters have limited that expert's hourly rate. *See, e.g., DePena v. Sec'y of Health & Human Servs*., No. 13-675, 2017 WL 1476240 at *4 (Fed. Cl. Spec. Mstr. Mar. 30, 2017); *Anderson v. Sec'y of Health & Human Servs.,* No. 02-1314V, 2017 WL 2927044, at *3 (Fed. Cl. Spec. Mstr. May 24, 2017); *Lozano v. Sec'y of Health & Human Servs.,* No. 15-369, 2017 WL 6942528, at *3 (Fed. Cl. Spec. Mstr. Dec. 7, 2017); *Schultz v. Sec'y of Health & Human Servs.,* No. 16-539V, 2018 WL 1835104, at *3-4 (Fed. Cl. Spec. Mstr. Feb. 16, 2018). Experts in the Program rarely receive a rate in excess of $500 per hour. In some situations, an expert with Dr. Wilkerson's credentials may warrant compensation at a rate of $525 per hour. Because Dr. Wilkerson's expert report did not articulate a theory of causation and did not cite to medical literature, I find the requested rate of $525 per hour to be excessive.

---

[7] Total costs should be $27,340.10. *See supra* footnote 3.

Accordingly, I reduce Dr. Wilkerson's rate to $450 per hour and award Petitioners **$22,725.00** for Dr. Wilkerson's expert costs.

*ii. Miscellaneous costs*

I have reviewed all of the miscellaneous costs for which compensation is requested, including the supporting documentation, and I find them all to be reasonable. They shall be reimbursed in full: **$827.60**, despite Petitioners' computation error.[8]

Total costs to be awarded: **$23,552.60.**

### III. Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioners' application, as follows:

A sum in the amount of **$18,327.60**, representing reimbursement of Petitioners' out-of-pocket payment of Dr. Wilkerson's expert costs, retrieval of medical records, and postage costs, in the form of a check payable to Petitioners; and

A sum in the amount of **$20,480.00**, representing reimbursement of Ms. Sharla Svennes' fees, in the form of a check jointly payable to Petitioners and Ms. Sharla Svennes; and,

A sum in the amount of **$14,171.00**, representing reimbursement of Mr. Robert Trzynka's interim fees and the remainder of Dr. Wilkerson's expert costs, in the form of a check jointly payable to Petitioners and Mr. Robert Trzynka.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[9]

Any questions regarding this Order may be directed to my law clerk, Sydney Lee, by telephone at 202-357-6347, or by email at Sydney_Lee@cfc.uscourts.gov.

**IT IS SO ORDERED.**

<u>s/ Katherine E. Oler</u>
Katherine E. Oler
Special Master

---

[8] *See supra* footnote 3.

[9] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.